**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KAREEM JACKSON,**

       **Petitioner,**

    **v.**                           **Case No.  2:03-cv-983**
                                            **JUDGE GREGORY L. FROST**

**MARGARET BRADSHAW, Warden,**       **Magistrate Judge Terence P. Kemp**

       **Respondent.**

## OPINION AND ORDER

On September 28, 2007, this Court entered final judgment dismissing Petitioner's capital habeas corpus action.  (ECF No. 57.)  This matter is before the Court for consideration of Petitioner's Motion For Independent Relief on Behalf of Petitioner, Kareem Jackson, Pursuant to Fed. R. Civ. P. 60(d)(1).  (ECF No. 97.)  Also before the Court are Respondent's Motion to Dismiss (ECF No. 100), Petitioner's Brief in Opposition (ECF No. 101), Respondent's Reply (ECF No. 102), and Petitioner's Motion for Leave to File Sur-Reply (ECF No. 103).

Petitioner requests relief from the portion of this Court's September 28, 2007 Opinion and Order (ECF No. 56) denying relief on Petitioner's claim of ineffective assistance of counsel for the failure to zealously represent Petitioner by failing to call accomplice Michael Patterson as a defense witness.  (ECF No. 56, at Page ID # 730-43.)  Petitioner asserts that relief is necessary to prevent a grave miscarriage of justice.  According to Petitioner, this Court's reasoning was based on an erroneous presumption of critical facts that are now known through Patterson's statement to police that was not a part of the record before this Court and that Petitioner has attached.  (ECF No. 98-1.)  "Had the District Court addressed this claim based upon a full

1

record," Petitioner argues, "the resolution of this claim would have been reasoned otherwise and the result would have been favorable to Mr. Jackson such that upon a grant of habeas relief, he would not be subject to a death sentence as the principal offender." (ECF No. 97, at Page ID # 1213.)

In his first ground for relief, Petitioner raised numerous claims of ineffective assistance of counsel. Subpart I-A asserted that Petitioner's trial counsel were ineffective for failing to call Michael Patterson as a witness. (ECF No. 18-1, at Page ID # 145-147.) The Court sets forth Petitioner's claim verbatim below:

> 2.      Michael Patterson participated in the robberies and deaths of the victims. As a result, Mr. Patterson was charged with involuntary manslaughter and aggravated robbery. (Vol. XI, page 125). Mr. Patterson entered into a plea agreement (Joint Exhibit 2) with the prosecution requiring him to testify on behalf of the State. Mr. Patterson was ultimately sentenced to 15 years. (Tr. Vol. XI, page 108).

> 3.      Prior to trial, defense counsel learned that Mr. Patterson sent a letter (Defense Exhibit A) to the defendant indicating his [Patterson's] willingness to tell the truth about what happened. (Tr. Vol. X, page 96).

> 4.      After learning that Michael Patterson might be a helpful witness, Defense counsel provided the prosecutor with a [copy of the] letter Mr. Patterson had written and contacted Mr. Patterson's lawyer to set up a meeting. (Tr. Vol. X, page 97). At that meeting, Mr. Patterson indicated that he did not want to speak with Mr. Jackson's counsel because he understood that he was in jeopardy of losing his plea agreement. (Tr. Vol. X, pages 96-97). Mr. Patterson further indicated that if called he would invoke his privilege against self-incrimination. Due to Mr. Patterson voicing his intention to invoke his privilege against self-incrimination, defense counsel declined to call him as a witness. (Tr. Vol. X, page 100).

> 5.      Defense counsel had no duty to turn over Mr. Patterson's letter to the prosecution unless and until Mr. Patterson testified. Ohio R. Crim. P. 16(C)(1)(d). The decision to inform the prosecutor about the letter had no strategic purpose, and it significantly prejudiced Mr. Jackson. Because the prosecution learned of the letter, Mr. Patterson was pressured that he could lose his plea agreement if he testified for the defense. This caused the defense to lose

a valuable witness.  (See Sixth Ground for Relief).

6.      Trial counsel should have called Mr. Patterson as a witness so that the trial court could voir dire him as to the bona fides of his claim of privilege.

7.      Once the privilege against self-incrimination is asserted in a judicial proceeding, the trial court must determine if the claim is valid.  In Hoffman v. United States, 341 U.S. 479, 486-87 (1951), the test was delineated as follows:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say so does not itself establish the hazard of incrimination.  It is for the court to say whether his silence is justified…and to require him to answer if it clearly appears to the court that he is mistaken.  To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

8.      A guilty plea is a waiver of a witness's constitutional privilege against self-incrimination.  Boykin v. Alabama, 395 U.S. 238, 243 (1969).  The waiver relative to a guilty plea is operative only with respect to the crime for which the witness is charged.  United States v. Damiano, 579 F.2d 1001 (6th Cir. 1978).  Since Mr. Patterson had pleaded guilty to involuntary manslaughter, he had waived his privilege with respect to his involvement in that offense.  There is no indication from the letter that Mr. Patterson was being compelled to be a witness against himself.  Rather, he was going to be a witness as to the level of Mr. Jackson's involvement.  Under such circumstances, Mr. Patterson had no privilege to assert.  Therefore, defense counsel violated an essential duty owed to Mr. Jackson, that being the duty to zealously obtain favorable evidence.  See Williams v. Taylor, 529 U.S. 362 (2000).  Mr. Jackson was prejudiced because favorable evidence would have been placed before the jury.

(ECF No. 18-1, at Page ID # 145-47.)

In a May 10, 2005 Opinion and Order, this Court denied Petitioner's motion for leave to conduct discovery on this claim.  (ECF No. 41, at Page ID # 559-62.)

In its September 28, 2007 Opinion and Order, this Court rejected Petitioner's claim on the merits, stating:

In Part I of his first ground for relief, Petitioner submits in sub-part (A) that his defense counsel abrogated their duty to zealously represent Mr. Jackson when they failed to call Michael Patterson as a witness.  (Amended Petition, Doc. # 18, at ¶¶ 2-8.)  Mr. Patterson participated in the planning and robberies of the victims and, as a result, was charged with involuntary manslaughter and aggravated robbery.  He entered into a plea agreement that, among other things, required him to testify truthfully if called by the State, and ultimately he received a fifteen-year prison sentence.  At some point prior to or during Petitioner's trial, defense counsel learned that Mr. Patterson purportedly had sent a letter to Petitioner offering "to tell the truth" about what had happened during the incident.  (J.A. Vol. II, D.A., OSC, Part B, at 121.)  Petitioner's defense counsel provided the prosecutors with a copy of the letter and contacted Mr. Patterson's attorney for the purpose of setting up a meeting with Mr. Patterson.  When defense counsel met with Mr. Patterson, Mr. Patterson indicated that he no longer was willing to speak to them because he understood that he was in jeopardy of losing his plea agreement and that he intended, on his counsel's advice, to invoke his Fifth Amendment privilege against self-incrimination if called to testify at Petitioner's trial.  He also apparently failed to authenticate the letter.  Subsequently, over Petitioner's objection, defense counsel declined to call Mr. Patterson as a witness or to attempt to introduce the letter into evidence.  (Tr. Vol. X, at 103-104.)

Petitioner argues that his attorneys performed unreasonably because they had no obligation or strategic reason for informing the prosecutors about Mr. Patterson's letter and that by doing so, they gave the prosecutors an opportunity to pressure Mr. Patterson into backing out of his offer to assist Petitioner.  Petitioner further argues that counsel had no strategic reason for declining to call Mr. Patterson to the stand so that, at the very least, the trial court could determine whether Mr. Patterson even was entitled to invoke his Fifth Amendment privilege against self-incrimination.  Petitioner argues that Mr. Patterson's guilty plea effectively operated as a waiver of his Fifth Amendment privilege regarding these offenses and that there was no indication from his letter that he was being compelled to incriminate himself or intended to testify as to anything other than Petitioner's involvement in the offense.  Petitioner argues that counsel's deficient performance was prejudicial because it deprived Petitioner of the opportunity to present a favorable witness.

Petitioner raised this allegation of ineffective assistance of counsel on direct appeal to the Ohio Supreme Court.  (J.A. Vol. II, D.A., OSC, Part A, at 146-48.)  Citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Ohio Supreme Court prefaced its discussion of all of Petitioner's claims of trial counsel ineffectiveness by stating that "[r]eversal of a conviction based upon ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial."  *Jackson*, 92 Ohio St. 3d

4

at 445-46. The Ohio Supreme Court went on to reject Petitioner's claim challenging his trial counsel's refusal to call Michael Patterson, holding that Petitioner had not established either deficient performance or prejudice. Citing *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951), the Ohio Supreme Court recognized that when a witness asserts the privilege against self-incrimination, it is for the trial court to determine whether the witness's refusal to answer is justified. *Jackson*, 92 Ohio St. 3d at 447. Although that did not happen in this case, due to counsel's decision not to call Mr. Patterson, the Ohio Supreme Court explained that "counsel's decision in not calling Mr. Patterson as a defense witness could well have been a tactical decision and therefore cannot be considered as rising to the level of ineffective assistance of counsel." *Jackson*, 92 Ohio St. 3d at 447. "Furthermore," the Ohio Supreme Court explained, "[Jackson] has not proven that but for his counsel's actions, the result of the case would have been different." *Id*. Specifically, the Ohio Supreme Court concluded, Petitioner made no showing that Mr. Patterson's testimony would have aided Petitioner in his defense. *Id*.

Petitioner argues herein that he is entitled to relief under 28 U.S.C. § 2254(d)(2) because the Ohio Supreme Court's decision involved an unreasonable determination of the facts and law in light of the evidence presented in state court. (Traverse, Doc. # 42, at 16.) Petitioner further argues that he is entitled [to] relief because, although *Strickland* holds that a Petitioner is prejudiced if counsel's deficient performance undermines confidence in the outcome of his trial, the Ohio Supreme Court in this case incorrectly employed an outcome-determinative test for examining whether prejudice existed. (*Id*.)

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the

5

difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determined that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

For the reasons that follow, the Court is not persuaded either that counsel performed deficiently or that, but for counsel's performance, there is a reasonable probability that the outcome of Petitioner's trial would have been different. Further, the Court is not persuaded that the Ohio Supreme Court's decision rejecting Petitioner's claim involved either an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts.

To demonstrate deficient performance sufficient to satisfy the first prong of the *Strickland* standard, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The decision of which witnesses to call and what evidence to present generally is reserved for counsel's discretion and judgment. *See, e.g., United States v. Foreman*, 323 F.3d 498, 504 (6th Cir. 2003). Regarding the deference that a reviewing court owes to counsel's discretion and judgment, the Supreme Court has instructed that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690; *Wiggins*, 539 U.S. at 521.

In rejecting Petitioner's claim that his trial attorneys were ineffective for not calling Michael Patterson to the stand, the Ohio Supreme Court observed that "counsel's decision in not calling Patterson as a defense witness could well have been a tactical decision and therefore cannot be considered as rising to the level of ineffective assistance of counsel." *Jackson*, 92 Ohio St. 3d at 447. This Court cannot disagree with that assessment, much less find it unreasonable. If anything, this Court is of the view that counsel's decision not to call Mr. Patterson unequivocally was a tactical decision.

Unlike ineffective assistance claims in many cases, where the determination of what was or was not a tactical decision is largely a matter of

6

speculation, the record as to this ineffective assistance claim is relatively well developed on the issue of counsel's reasons for not calling Michael Patterson as a defense witness. A few weeks into Petitioner's trial, just before the defense called its final witness during its case-in-chief, Petitioner's trial attorneys placed on the record facts concerning Petitioner's receipt of a letter purporting to be from co-defendant Michael Patterson and defense counsel's reasons, ultimately, for declining to call Mr. Patterson as a defense witness. Defense counsel Mr. Schumacher explained that Petitioner had, at some point during the pendency of his trial, received and shown to counsel a letter from Mr. Patterson indicating his willingness "to tell the truth" about what had happened. This version of the events was contrary to what he had told the State to obtain his plea agreement. (Tr. Vol. X, at 95-96.) The letter was marked as defendant's exhibit A, not to be shown to the jury, but for purposes of appellate review. (*Id*. at 96.) Recognizing that the letter could be beneficial to Petitioner's case, according to Mr. Schumacher, defense counsel provided the letter to the prosecutors in compliance with discovery and then contacted Mr. Patterson's attorney, David Kentner, in order to set up a meeting. Mr. Kentner, in turn, spoke to Mr. Patterson and then relayed to Petitioner's defense attorneys that Mr. Patterson was amenable to meeting them. When Mr. Schumacher, co-counsel Mr. Rigg, and Mr. Kentner went to talk to Mr. Patterson at the county jail where, apparently, Mr. Patterson had been transported due to the prosecution's intention to call him to testify against Petitioner (Tr. Vol. X, at 99), Mr. Patterson indicated that he no longer wished to discuss the case with Petitioner's defense attorneys because he understood that he was in jeopardy of losing his plea agreement. Mr. Patterson refused to say anything to authenticate the letter or its contents, and declined to discuss what he would say in court beyond invoking his Fifth Amendment privilege against self-incrimination. (*Id*. at 97.)

To this, prosecuting attorney Mr. Stead added that Michael Patterson had a plea agreement that required him to cooperate and provide truthful testimony if the State needed him. According to Mr. Stead, the prosecution had already brought Mr. Patterson from the Lebanon Correctional Institute to the Franklin County jail so the prosecution could call him to testify at Petitioner's trial when Mr. Stead learned "there was a potential problem" regarding Mr. Patterson's testimony. (*Id*. at 99.) Mr. Stead, accompanied by co-counsel Ms. Kurilchick and Detective Larry Winters, met with Mr. Patterson, at which point Mr. Patterson refused to discuss the case. Mr. Stead stated that he informed Mr. Patterson that he (Stead) was of the view that Mr. Patterson was not living up to his plea agreement and that Mr. Patterson should talk to his lawyer. Mr. Stead stated that he, too, spoke to Mr. Patterson's lawyer, Mr. Kentner, to inform him that the prosecution was of the view that Mr. Patterson was not living up to his end of the bargain and that the prosecution had a basis for seeking to have the plea agreement set aside. Mr. Stead stated to Mr. Kentner that the prosecution had not decided for certain whether it would, in fact, seek to have Mr. Patterson's plea

agreement set aside. (*Id*. at 99-100.) Mr. Kentner substantiated the representations by Mr. Schumacher and Mr. Stead. (*Id*. at 98, 100.)

Mr. Schumacher then explained, on the record, defense counsel's reasons for declining to call Mr. Patterson as a defense witness over their client's objection. First, according to Mr. Schumacher, defense counsel were of the view that it would be unethical to call Mr. Patterson to the stand solely for the purpose of having the jury hear him invoke his privilege against self-incrimination. (*Id*. at 100-101.) Beyond that, Mr. Schumacher continued, defense counsel decided "as a tactical reason" not to call to the stand a witness who was on record with the prosecution with a statement that involved Petitioner in the crime. (*Id*. at 101.) [fn.3 Patterson's statement was marked as defendant's exhibit B, not to be shown to the jury, but for purposes of appellate review. (Tr. Vol. X, at 101.) That statement is not part of the record before this Court.] Mr. Schumacher emphasized that defense counsel would have considered calling Mr. Patterson if they had had any inkling that he might say something contrary to his previous statement to authorities, but that with "absolutely no idea what" Mr. Patterson would say, defense counsel would have been "foolhardy" to have called Mr. Patterson. (*Id*. at 101-102.) Co-counsel Mr. Rigg emphasized that Mr. Patterson would not tell defense counsel what he would say if called to the stand and that Mr. Rigg was reluctant to call a witness without knowing what that witness would say, "especially since had said damaging things against Mr. Jackson before." (*Id*. at 103.) Finally, at the trial court's invitation, Petitioner Jackson stated on the record that he did not understand why his attorneys could not put the letter into evidence, to which Mr. Schumacher responded that defense counsel were of the view that the Rules of Evidence precluded admission of the letter, not only because it had not been authenticated but also because of hearsay rules. (*Id*. at 103-104.)

In arguing that his attorneys performed deficiently, Petitioner asserts that Mr. Patterson's announced intention to invoke his Fifth Amendment privilege against self-incrimination did not justify counsel's decision not to call him as a defense witness and that counsel violated their duty to represent zealously Petitioner when they provided Mr. Patterson's letter to the prosecutor, thereby giving the prosecution an opportunity to coerce Mr. Patterson into backing out of his offer to testify for Petitioner. Both arguments miss the mark. First, contrary to Petitioner's assertion, Mr. Patterson's announced intention to invoke his privilege against self-incrimination was <u>not</u> the sole, or even primary, reason that trial counsel declined to call him as a defense witness. As detailed above, Petitioner's trial attorneys provided several tactical reasons why, beyond Mr. Patterson's intention to invoke his privilege against self-incrimination, they did not wish to call Mr. Patterson as a defense witness. Notwithstanding Mr. Patterson's purported letter to Petitioner stating his willingness to "tell the truth" (J.A. Vol. II, D.A., OSC, Part B, at 121), Mr. Patterson refused to discuss with

8

Petitioner's trial attorneys not only the events of March 24-25, 1997, but also what he would say if called as a defense witness. Counsel had no idea what Mr. Patterson would say if called as a defense witness but of the three possible scenarios, the one that might have been beneficial to Petitioner was the least probable. Not knowing whether Mr. Patterson would "take the Fifth" and say absolutely nothing, testify consistent with his purported letter and contrary to his statement to authorities, or testify consistent with his statement to authorities and plea agreement, counsel chose not to take the risk. (Tr. Vol. X, at 102-03.) At best, given the substantial unlikelihood that Mr. Patterson would have jeopardized his favorable plea agreement by testifying consistent with his purported letter and contrary to the statement he had given authorities (a statement that presumably implicated Petitioner as the shooter), Mr. Patterson could have invoked his privilege against self-incrimination, thereby providing nothing of value to Petitioner's case. At worst, he could have testified consistent with his plea agreement and statement to authorities, providing additional, damaging evidence against Petitioner. This Court is of the view that counsel were reasonable in deciding not to risk putting Mr. Patterson on the stand.

Petitioner focuses much of his argument here, as he did in the state courts, on the premise that counsel were obligated to call Mr. Patterson as a defense witness so that, at the very least, the trial court could determine whether he was entitled to refuse to answer questions on the basis of his privilege against self-incrimination. *See Hoffman v. United States*, 341 U.S. 479, 486-87 (1951) ("The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say so does not itself establish the hazard of incrimination.") Petitioner reasons that because Mr. Patterson had pleaded guilty to involuntary manslaughter and because Mr. Patterson gave no indication in his letter that he was being compelled to be a witness against himself, Mr. Patterson was not entitled to invoke his privilege against self-incrimination and could not have refused to answer questions about the level of Petitioner's involvement in the offenses. (Traverse, Doc. # 42, at 15-16.) Even if trial counsel were mistaken in their belief that they could not ethically call a witness to the stand solely for the purpose of that witness "taking the Fifth," as Petitioner suggests and contrary to what *Hoffman* seems to say about the fact that it is for the trial court to say whether a witness may invoke the Fifth Amendment privilege, the fact remains that, as discussed above, Petitioner's trial counsel voiced other, more substantial tactical reasons for not calling Mr. Patterson as a defense witness and those reasons justify their decision.

Regarding Petitioner's argument that defense counsel had no obligations to disclose Mr. Patterson's letter to the prosecution and that doing so gave the prosecution an opportunity to coerce Mr. Patterson into not testifying, that argument fails because it finds no support in the record. The Ohio Supreme Court, in rejecting a related claim by Petitioner of prosecutorial misconduct,

found no evidence in the record that the prosecution had unduly coerced Mr. Patterson not to testify on Petitioner's behalf. (J.A. Vol. II, D.A., OSC, Part B, at 100.) Petitioner asserts that the Supreme Court's finding, which it referenced in rejecting Petitioner's claim that his trial attorneys were unreasonably deficient for providing Mr. Patterson's letter to the prosecution, constitutes an unreasonable determination of the facts in light of the evidence presented in the state courts. (Traverse, Doc. # 42, at 16.) But Petitioner offers nothing beyond pure speculation to cast doubt on that finding, much less the "clear and convincing evidence" necessary to rebut the presumption of correctness to which state court findings are entitled in habeas corpus. 28 U.S.C. §§ 2254(d)(2) and (e)(1).

Regardless of whether defense counsel had a duty under state discovery rules to provide Mr. Patterson's letter to the prosecution, Petitioner's argument that their doing so gave the prosecution an opportunity to coerce Mr. Patterson into backing out of his offer to help Petitioner rings hollow. Petitioner's argument suggests that defense counsel's decision to provide Mr. Patterson's letter to the prosecution alerted the prosecution to meet with Mr. Patterson before defense counsel had a chance to meet him for the purpose of coercing him into backing out of his offer to testify for Petitioner. The record, however, indicates that the prosecution would have talked to Mr. Patterson regardless of whether they had been informed about his letter to Petitioner. The prosecution had brought Mr. Patterson from the correctional facility where he was incarcerated to the county jail for the purpose of calling him to testify against Petitioner, consistent with his plea agreement wherein he had promised to cooperate with the State and provide testimony in any trial in which the State called him. (Tr. Vol. X, at 99.) When lead prosecutor Mr. Stead learned that "there was a potential problem,"—when he learned of Mr. Patterson's letter to Petitioner—Mr. Stead met with Mr. Patterson, who refuse to discuss the case at all. (*Id.*) It was at that point that Mr. Stead advised Mr. Patterson that his refusal to cooperate could result in the revocation of his plea agreement. (*Id.* at 99-100.)

The Ohio Supreme Court thus found no indication that the prosecution had threatened or prevented Mr. Patterson from testifying as a defense witness and found that the prosecution had merely reiterated the terms of Mr. Patterson's plea agreement. Petitioner has not shown, and this Court is not otherwise persuaded after its own review of the record, that the Ohio Supreme Court's determination of the facts was unreasonable in light of the evidence presented.

Even assuming that Petitioner's trial counsel had performed deficiently with respect to the manner in which they handled Mr. Patterson's letter to Petitioner or their decision not to call Mr. Patterson as a defense witness—a notion that this Court absolutely rejects—the fact remains that Petitioner fails entirely to demonstrate that he was prejudiced by counsel's allegedly deficient performance. Petitioner has not shown that there is a reasonable probability that,

but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. If demonstrating prejudice under *Strickland* requires a showing that counsel "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory," *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) (emphasis in original), Petitioner falls considerably short. The Ohio Supreme Court concluded with respect to the prejudice prong of *Strickland* that "there was no showing that the testimony of Patterson would have aided [Jackson] in his defense." *Jackson*, 92 Ohio St. 3d at 447. This Court agrees.

In his purported letter to Petitioner, Mr. Patterson stated, among other things, that "I got to tell the truth," and "I got to tell them that Boone did it." (J.A. Vol. II, D.A., OSC, Part B, at 121.) Mr. Patterson's letter was never authenticated, and Petitioner has never offered a shred of evidence beyond that letter, such as an affidavit or postconviction testimony, to demonstrate what Mr. Patterson might have testified to or substantiate the cryptic reference in the letter "that Boone did it." That being so, this Court cannot find unreasonable the Ohio Supreme Court's conclusion that Petitioner failed to show that Mr. Patterson's testimony would have been favorable to his defense.

Petitioner argues that the Ohio Supreme Court erred in its application of *Strickland*'s prejudice standard by employing a more stringent "outcome determinative" test. (Doc. # 42, at 16.) Petitioner's argument is unpersuasive. This Court is of the view that, in holding that "[Jackson] has not proven that but for his counsel's actions, the result of the case would have been different," *Jackson*, 92 Ohio St. 3d at 447, the Ohio Supreme Court was simply making an abbreviated reference to *Strickland*'s prejudice standard by omitting the "reasonable probability" modifier, not requiring a more stringent "outcome determinative" showing. Such "shorthand reference[s]" to *Strickland*'s prejudice standard do not result in a decision that contravenes or unreasonably applies clearly established Supreme Court precedent, especially where, as here, the state court prefaced its discussion of all of Petitioner's ineffective assistance claims by citing *Strickland* and correctly stating the prejudice standard as set forth in *Strickland*. *Urban v. Ohio Adult Parole Authority*, 116 F. App'x 617, 627 (6th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2002) (*per curiam*), and *Holland v. Jackson*, 542 U.S. 649 (2004) (*per curiam*).

It is true that failure to investigate or call a particular witness can constitute ineffective assistance in violation of the Sixth Amendment. *See, e.g., Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases). But cases in which courts have found ineffective assistance under those circumstances involved not only a complete failure on the part of counsel to investigate the witness or even explain the failure to investigate, but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have

favorable testimony to offer.  *See Stewart v. Wolfenbarger*, 468 F.3d 338, 356-57 (6th Cir. 2006); *Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005); *Clinkscale v. Carter*, 375 F.3d at 443.  The instant case, on the other hand, involves none of those elements.  *See, e.g., Goldsby v. United States*, No. 04-3340, 152 F. App'x 431, 436 (6th Cir. 2005) (finding no ineffectiveness for failure to call witness who was unlikely to provide helpful testimony and more likely to support government's case and for choice to focus on more promising avenues of investigation).

For the foregoing reasons, the Court denies sub-part (A) of Petitioner's first ground for relief regarding trial phase ineffectiveness.  Petitioner has not shown, and it does not otherwise appear to this Court, that the Ohio Supreme Court's decision rejecting that ineffective assistance claim contravened or unreasonably applied controlling Supreme Court precedent or involved an unreasonable determination of the facts in light of the evidence presented.

(ECF No. 56, at Page ID # 730-43.)

Petitioner asserts in the instant request for relief that the content of Patterson's March 28, 1997 statement to police (ECF No. 98-1), which was not a part of the record before this Court and which this Court did not order the parties to produce before the Court denied Petitioner's claim, "not only supports Mr. Jackson's IAC claim, it supports that Mr. Jackson is innocent of the death penalty."  (ECF No. 97, at Page ID # 1245.)

Petitioner styles the instant pleading as a motion for independent relief pursuant to Fed. R. Civ. P. 60(d)(1).  That provision is a "savings clause" component of Fed. R. Civ. P. 60.  Rule 60, entitled "Relief From a Judgment of Order," provides as follows:

**(a)  Corrections Based on Clerical Mistakes; Oversights and Omissions.**  The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice.  But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b)  Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

12

> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> **(4)** the judgment is void;
>
> **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> **(6)** any other reason that justifies relief.
>
> **(c)  Timing and Effect of the Motion.**
>
>> **(1)** *Timing*.  A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
>>
>> **(2)** *Effect on Finality*.  The motion does not affect the judgment's finality or suspend its operation.
>
> **(d)  Other Powers to Grant Relief.**  This rule does not limit a court's power to:
>
>> **(1)** entertain an independent action to relieve a party from a judgment, order, or proceeding;
>>
>> **(2)** grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
>>
>> **(3)** set aside a judgment for fraud on the court.
>
> **(e)  Bills and Writs Abolished.**  The following are abolished:  bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

Fed. R. Civ. P. 60.

Petitioner argues that he qualifies for relief under Rule 60(d) because there is no current

remedy available to Petitioner—in other words, because he does not qualify for relief under the

provisions of Rule 60(b).  Petitioner asserts that because of the extraordinary circumstances

stemming from this Court's erroneous presumption of critical facts and because Petitioner has an

execution date scheduled for September 21, 2016, "this equitable pleading should be granted to

correct the District Court's error and ensure the integrity of the judicial process rendered in Mr.

Jackson's case."  (ECF No. 97, at Page ID # 1245-246 (citations omitted).)

> In the Sixth Circuit, the "indisputable elements" of an independent action are as follows:
>
> (1) a judgment which ought not, in equity and good conscience, []be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of this defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (citations omitted); *see also Barrett v. Sec'y*

*of Health & Human Servs.*, 840 F.2d 1259, 1263 (6th Cir. 1987); *Marcelli v. Walker*, 313 F.

App'x 839, 842 (6th Cir. 2009); *Buell v. Anderson*, 48 F. App'x 491, 498 (6th Cir. 2002).

"Moreover," the Sixth Circuit in *Mitchell* noted, "an independent action is available only to

prevent a grave miscarriage of justice."  *Mitchell*, 651 F.3d at 595 (internal quotation marks and

citations omitted);  *see also Marcelli*, 313 F. App'x at 842; *Buell*, 48 F. App'x at 498.  To that

point, the Sixth Circuit in *Mitchell* echoed the observation voiced by other circuits that the

standard set forth above is, and was meant to be, stringent and demanding.  *Id*.  Finally, the Sixth

Circuit noted that when brought in the context of a habeas corpus action, a viable Rule 60(d)

independent action requires a strong showing of actual innocence.  *Mitchell*, 651 F.3d at 596; *see*

*also Washington v. Howes*, No. 2:08-cv-11341, 2013 WL 5245075, at *2 (6th Cir. Sep. 18,

2013).

14

The essence of Petitioner's argument is as follows:

> When it is realized that nowhere in Patterson's statement to the authorities does he make any suggestion that Mr. Jackson was the shooter, there is no legitimate reason offered in the record to support either the Prosecution's feigned threat to withdraw Patterson's plea agreement for testifying truthfully or defense counsel's refusal to call Patterson was requested by their client.  Thus, Rule 60(d) relief is warranted because the District Court's reasoning is *only* sound when it proceeds upon the erroneous "presumption" that Patterson's original statement to the police "implicated Petitioner as the shooter."  Said presumption was made in place of a full review of Mr. Jackson's IAC claim based on a complete and accurate record.

(ECF No. 97, at Page ID # 1229.)

Petitioner begins his arguments by recounting the state's theory of the case and the manner in which Patterson's March 28, 1997 statement allegedly contradicts that theory. Specifically, according to Petitioner, although the state's theory was that of the four accomplices inside the apartment during the incident, Petitioner was the only one responsible for the shootings, nowhere in the March 28, 1997 statement did Patterson "ever identify or even suggest that [Petitioner] was the actual shooter."  (ECF No. 97, at Page ID # 1221.)

Petitioner next describes the alleged "fallout" from Patterson's conflicting account of the events and defense counsel's decision not to call Patterson as a defense witness.  In doing so, Petitioner suggests that the prosecution intimidated Patterson into not taking the stand to testify that Derrick Boone was the shooter by threatening to withdraw Patterson's plea agreement when, according to Petitioner, the prosecution had no authority to do so.  (*Id*. at Page ID # 1222-224.) Petitioner also argues that if the plea agreement only required Patterson to testify truthfully, and Patterson twice indicated in his letter to Petitioner that "the truth was that 'Boone did it,' there could be no breach of the agreement."  (*Id*. at Page ID # 1223.)

Petitioner proceeds to the crux of his argument—namely that this Court denied the

15

ineffective assistance claim set forth in ground I-A with respect to counsel's decision not to call Michael Patterson by assuming, incorrectly as it turns out, facts that were not, but should have been made, part of the record, to wit:  Patterson's March 28, 1997 statement.  (*Id*. at Page ID # 1225-227.)  Petitioner asserts that the now-revealed contents of Patterson's statement undermine this Court's conclusion that defense counsel made a reasonable tactical decision not to call Patterson and that defense counsel's decision did not prejudice Petitioner.  (*Id*. at Page ID # 1229-1230.)  According to Petitioner:

> [B]ecause Patterson's statement did *not* implicate Mr. Jackson as the shooter, because the statement questioned whether Mr. Jackson even had a gun, and because the State's theory of prosecution placed Patterson *inside* the house at the time of the shooting, the note to Mr. Jackson twice indicating the truth was that "Boone did it," was potentially of great help to the defense had they called Mr. Patterson as a witness.

(*Id*. at Page ID # 1230.)

"The three scenarios suggested by the District Court as demonstrative of trial counsel's strategic reasoning," Petitioner continues, "play out very differently when considering the true contents of Patterson's statement to police."  (*Id*.)  With respect to defense counsel's not knowing whether Patterson would "take the Fifth" and say absolutely nothing, Petitioner asserts that Patterson would not have been jeopardizing his plea agreement requiring him to testify truthfully because the "truth," as revealed by Patterson's March 28, 1997 statement and letter to Petitioner, was that Petitioner was not the shooter.  (*Id*. at Page ID # 1231.)

With respect to the defense counsel's not knowing whether Patterson would testify consistent with his letter and contrary to his statement to authorities, Petitioner asserts that because the complete record reveals that Patterson's March 28, 1997 statement did not implicate Petitioner as the shooter, this scenario posed no risk for defense counsel.  Petitioner reasons that

16

if Patterson had testified consistent with his letter stating "Boone did it," prompting the

prosecution to impeach Patterson with his March 28, 1997 statement, defense counsel would

have been able to advocate to the jury: that the prosecution never believed parts of Patterson's

statement and nonetheless offered him a favorable plea deal; that once the prosecution learned of

Patterson's letter to Petitioner, the prosecution went out of its way to ensure that the jury never

heard from Patterson; and that when two accomplices who both received favorable plea

agreements (Patterson and Boone) give significantly contradictory accounts of the incident,

reasonable doubt exists as to which one to believe. (*Id*. at Page ID # 1232-234.)

Finally, with respect to defense counsel's not knowing whether Patterson would testify

consistent with his statement to authorities and plea agreement, Petitioner argues that a complete

record demonstrates that this scenario "actually presented no downside for defense counsel."

(*Id*. at Page ID # 1234.) If Patterson had testified consistent with his statement that he had not

been in the house during the shootings, Petitioner argues that defense counsel could have pointed

out to the jury that even though the prosecution never believed that to be true, the prosecution

nonetheless gave Patterson a favorable plea deal. Petitioner argues that defense counsel also

could have confronted Patterson first with his plea agreement requiring him to testify truthfully

and then, with his letter in which he twice indicated that the truth was that "Boone did it." (*Id*. at

Page ID # 1234-235.) Petitioner also asserts that defense counsel could have had Patterson tell

the jury how the prosecution, upon learning of his letter to Petitioner, "confront[ed]" Patterson

and "threat[ened]" to withdraw his plea agreement. (*Id*. at Page ID # 1235.) Petitioner further

argues that if Patterson had testified consistent with his letter and contrary to Derrick Boone's

testimony, defense counsel could have argued that reasonable doubt existed sufficient to spare

17

Petitioner's life.  (*Id*. at Page ID # 1235-236.)  But if, Petitioner continues, Patterson had testified contrary to his letter and consistent with Derrick Boone's testimony, defense counsel could have impugned Patterson's credibility by arguing to the jury that the only reason he was testifying that way, as opposed to what he had stated in his letter, was because he feared losing his favorable plea deal.

Petitioner concludes that defense counsel, in possession of both Patterson's March 28, 1997 statement and Patterson's letter to Petitioner, "lacked any strategic reason for refusing Mr. Jackson's request to call Patterson as a defense witness."  (*Id*. at Page ID # 1236.)  Petitioner further argues that this Court erred in finding that Petitioner was not prejudiced by defense counsel's decision not to call Patterson because in light of the actual content of the now-revealed March 28, 1997 statement, it is clear that all three scenarios envisioned by the Court undermined the credibility of Derrick Boone's testimony or the integrity of the prosecutors.  (*Id*. at Page ID # 1237-241.)

Respondent moves the Court, pursuant to 28 U.S.C. §§ 2244(b)(1) and 2244(b)(3)(A), to dismiss Petitioner's application as an unauthorized second Petition.  (ECF No. 100.)  Respondent argues that Petitioner's application is in fact "a merits-based attack on the disposition of the prior habeas petition that must first be presented to the Sixth Circuit Court of Appeals."  (*Id*. at Page ID # 1275.)  Respondent reasons that Petitioner's rationale for requesting relief—namely that this Court's prior denial of the claim is void due to the failure of the Court to consider Patterson's now-known statement to authorities—is a "claim" within the meaning of *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005).  As such, Respondent asserts, Petitioner's application is not a "true 60(b)" motion that would be exempt to rules governing second or successive petitions.

18

(ECF No. 100, at Page ID # 1276.)  Petitioner characterizes the failure of this Court to consider Patterson's statement as "ordinary trial error," rather than the extraordinary grounds that would warrant Rule 60 relief.  (*Id*.)  Respondent notes that without an order by the Sixth Circuit authorizing the filing of a second petition, this Court lacks jurisdiction over Petitioner's application.  (*Id*. at Page ID # 1275.)  Respondent next challenges the substance of Petitioner's arguments, although noting that that is not necessary to the determination that the instant pleading is an unauthorized second petition rather than a Rule 60(b) motion.  (*Id*. at Page ID # 1277-278.)

Petitioner opposes Petitioner's motion to dismiss, arguing that Petitioner's reliance on *Gonzalez* and its progeny is misplaced because "it completely ignores the fact that Mr. Jackson's application for relief is not a 60(b) motion at all."  (ECF No. 101, at Page ID # 1280.)  Relying on *Buell v. Anderson*, 48 F. App'x 491, 492 (6th Cir. 2002), Petitioner first argues that "an independent action brought pursuant to Rule 60(d) may prevail notwithstanding that it would be barred as a successive petition if brought pursuant to Rule 60(b)."  (ECF No. 101, at Page ID # 1281.)

Petitioner proceeds to offer arguments why the instant Application is neither a second petition nor even a Rule 60(b) motion, but rather a legitimate independent action pursuant to Rule 60(d).  First, according to Petitioner, because Rule 60(d) relief is intended to ensure the integrity of a state's judicial process, "particularly when that may culminate in a defendant's execution[,]" a Rule 60(d) application "embodies the type of application for relief that is not barred as successive."  (*Id*. at Page ID # 1282.)  Petitioner asserts that his request is a Rule 60(d) motion because he has been subjected to a judgment that ought not, in equity and good

19

conscience, be enforced because he is actually innocent of the relevant death penalty specification.  He continues that he was prevented from obtaining the benefit of a good defense based on actual innocence by virtue of this Court's erroneous presumption of critical facts. Petitioner also notes that he is without any other remedy at law.

Petitioner next argues that even assuming the Court construes the instant request as a Rule 60(b) motion for relief from judgment, rather than a Rule 60(d) motion for independent relief, *Gonzalez* and its progeny do not preclude relief.  (*Id*. at Page ID # 1283-286.)  Petitioner reasons that *Gonzalez* and the rules governing the pursuit of a second or successive petition apply only when the pleading at issue asserts a new ground for relief or argues that a ruling on a previously raised ground was in error.  *Gonzalez* does not apply, Petitioner emphasizes, when the pleading at issue attacks not the substance of the federal court's resolution of a claim, but an alleged defect in the integrity of the federal habeas proceedings.  Petitioner thus insists that he does not argue that this Court should revisit its denial of ground I-A due to a mistake by counsel or in light of new evidence.  "Rather," Petitioner asserts, "Mr. Jackson's motion highlights a serious defect in the integrity of his prior habeas proceedings."  (*Id*. at Page ID # 1285.) Specifically, Petitioner argues that this Court's prior denial of ground I-A "is only sound based on a factual assumption made by the Court, which assumption turned out to be false."  (*Id*.) Petitioner continues, "[r]endering a decision based upon an incomplete record and assumed facts undermined the integrity of Mr. Jackson's habeas proceedings and rendered said proceedings arbitrary insofar as the decision is unsupported by the record."  (*Id*.)  Petitioner argues that this went well beyond "ordinary trial error."  (*Id*. at Page ID # 1286.)  Petitioner concludes that if this Court construes the instant request as a 60(b) motion, the Court should construe it as a request

targeting the integrity of the prior habeas proceedings (which would not be governed by successive petition procedures), not a request raising a new claim or challenging this Court's prior denial of ground I-A, which would be governed by successive petition rules.

Petitioner next challenges Respondent's alleged "mischaracterization" of Petitioner's underlying ineffective assistance claim and Rule 60(d) argument. Petitioner insists that his ineffective assistance claim concerning Patterson's letter and testimony has never been based on defense counsel's failure to force Patterson to assert his Fifth Amendment privilege. "Rather," Petitioner states, "the underlying IAC claim concerns defense counsel's unreasonable and incorrect assumption that Patterson had a viable Fifth Amendment right to assert." (*Id*. at Page ID # 1287.)

Respondent argues in reply that even assuming there exists "a motion for independent relief" that lies outside the reach of second petition rules, the instant pleading does not qualify. (ECF No. 102, at Page ID # 1291.) Specifically, Respondent charges that Petitioner's pleading fails to assert, or otherwise state facts supporting a finding of, "extrinsic fraud." (*Id*.) Respondent also argues that Petitioner's pleading scarcely goes to the integrity of the prior habeas proceedings because "it would make no difference to the outcome of the Michael Patterson IAC claim whether or not this Court read Patterson's statement to the police." (*Id*. at Page ID # 1292.) Respondent's reasoning appears to hinge on an allegation that Petitioner has recast the focus of his ineffective assistance claim on whether Patterson, by virtue of his guilty plea, even had a right to assert a Fifth Amendment privilege. Respondent asserts that under this alleged reformulation of the ineffective assistance claim, the content of Patterson's now-known statement to police was irrelevant. As such, Respondent reasons, no defect resulted from this

Court's assumption about the content of the statement because knowing the content of Patterson's statement would not have altered this Court's prior denial of the claim.  (*Id*.)

Petitioner seeks leave to file a sur-reply "to address the State's misrepresentations regarding the requirements of an independent action and the basis of the instant Rule 60(d) motion." (ECF No. 103, at Page ID # 1295.)  Specifically, Petitioner asserts, "extrinsic fraud is not a required element of an independent action."  (*Id*.)  Petitioner states that "the State's argument overlooks the fact that accident or mistake may also give rise to an independent action." (*Id*. at Page ID # 1295-1296.)  Because the Court deems itself capable of gleaning from relevant case law the elements of a motion for independent relief, the Court **DENIES** Petitioner's motion for leave to file a sur-reply.  (ECF No. 103.)

Upon examination of the specific arguments Petitioner makes in an attempt to satisfy the "indisputable elements" for Rule 60(d) relief, the Court concludes that Petitioner satisfies almost none of them.  Petitioner argues that the judgment "in equity and good conscience" ought not be enforced because this Court resolved the ineffective assistance claim set forth in ground I-A "based upon a mistakenly erroneous presumption about what Patterson had told the authorities." (ECF No. 97, at Page ID # 1227.)  Petitioner also argues that "[t]his mistake prevented Petitioner from receiving the benefit of a proper review of his IAC claim based on a full record."  (*Id*.) Petitioner states in support of these arguments that when this Court agreed with the Ohio Supreme Court's assessment that defense counsel's decision not to call Patterson was a virtually unchallengeable tactical decision, "the District Court's conclusion was premised on the mistaken assumption that the version of the events indicated in Patterson's letter that "Boone did it" was *contrary* to what he had previously told State authorities in order to obtain his plea agreement.

(*Id*. at Page ID # 1227-228 (emphasis in original).)  But that is not the case.

This Court's conclusion unmistakably hinged on defense counsel's express and repeated representations on the record that a central reason counsel were reluctant to call Patterson, despite the possibility that he could provide testimony favorable to Petitioner, was because *counsel had no idea what Patterson would say*.  Patterson would not tell them what he would testify to or discuss the letter.  It bears emphasizing that defense counsel were in possession of Patterson's March 28, 1997 statement and fully aware of its contents.  Knowing the contents of Patterson's statement would not have changed this Court's conclusion about the reasonableness of defense counsel's tactical decision not to call Patterson.

Even if Patterson's statement unquestionably contained information favorable to Petitioner, if defense counsel could not be sure that Patterson would testify consistent with such a statement, counsel could still make a reasonable tactical decision not to call him.  Petitioner goes to great lengths to explain all of the ways that defense counsel could have used whatever testimony Patterson might have offered, along with the March 28, 1997 statement and letter to Petitioner, to impugn either Patterson himself, Derrick Boone, or the prosecutors.  Review of Petitioner's arguments, however, reveals that they are premised on one speculative assumption after another—none of which change the critical fact that defense counsel had no idea what Patterson would testify to and that is the reason they elected not to call him.

This is also why any arguments by Petitioner about whether defense counsel were mistaken as to whether Patterson actually had the right to assert a Fifth Amendment privilege are unpersuasive.  It was Patterson's refusal to tell defense counsel what he would testify to, favorable or unfavorable, and not whether Patterson would or could invoke the Fifth

Amendment, that made defense counsel leery of calling Patterson.  That was a reasonable tactical decision.  More importantly, nothing about the now-known contents of Patterson's March 28, 1997 statement undermines this Court's agreement with the Ohio Supreme Court's conclusion that it was a reasonable tactical decision.

Similarly, whatever effect the now-known contents of Patterson's statement might have on the three scenarios this Court hypothesized as demonstrative of trial counsel's strategic reasoning, the statement does not alter the Court's conclusion that counsel made a reasonable tactical decision not to call Patterson.  It bears repeating that the contents of Patterson's statement do not address the fact that defense counsel did not know what Patterson would testify to and that is why they decided not to call him.

Because the basis of defense counsel's tactical decision not to call Patterson was the fact that counsel did not know what Patterson would testify to, the now-known contents of his March 28, 1997 statement are irrelevant.  That said, having now seen the statement, this Court agrees with Respondent that Petitioner "grossly mischaracterizes the import of Patterson's statement to police."  (ECF No. 100, at Page ID # 1278.)  It is true, as Petitioner, asserts, that Patterson did not implicate Petitioner.  Petitioner glosses over the fact, however, that Patterson did not implicate anyone else as the shooter either.  Petitioner is also dismissive of the fact that Patterson was being evasive about any specifics in an obvious effort to deny that he was present in the apartment during the shootings and to otherwise downplay his involvement in the incident. (ECF No. 98-1.)  That undermines attaching any significance to details Patterson omitted, such as who the shooter was.  Petitioner nonetheless offers up Patterson's failure in his March 28, 1997 statement to identify Petitioner as the shooter or place a gun in Petitioner's hand, along

24

with Patterson's letter to Petitioner cryptically stating that Patterson wanted to tell the truth that "Boone did it," as compelling evidence demonstrating Petitioner was not the principal offender and is accordingly innocent of this death penalty specification.

Petitioner insists that Patterson was in the apartment, and therefore in a position to identify whether "Boone did it."  To this point, Petitioner encourages the Court to disregard any suggestion Patterson also made in his statement that he was *not* in the apartment during the shootings because the prosecution's theory of the case proved that Patterson *was* inside the apartment during the shootings.  Petitioner relies on Malaika Williamson's testimony placing Patterson inside the apartment at the time she heard the shots.  That is a mischaracterization of Ms. Williamson's testimony.  Ms. Williamson conceded more than once that from where she was parked along the side of the building, she could not see the front door of the apartment where the shootings took place.  (Tr. Vol. VIII, at 201, 227.)  Any testimony by Ms. Williamson placing anyone inside the apartment was an assumption on her part based on the fact that she could not see them.  Petitioner appears to want it both ways with respect to Patterson's March 28, 1997 statement:  Petitioner stresses the parts that he deems favorable and urges the Court to accept them without question, while dismissing any parts that would not help him or were untrue.  That seems a dubious position to take when seeking equitable relief.

Also dubious is Petitioner's assumption, in urging why Patterson's previously unknown statement was so critical to this Court's denial of ground I-A, that the March 28, 1997 statement constitutes the only information that Patterson ever gave to police.  Even if the March 28, 1997 statement is the only statement by Patterson *referenced* in the record, it seems implausible that Patterson did not provide authorities any information beyond that statement.  Up until Patterson

25

sent his letter to Petitioner claiming that "Boone did it," the prosecution had intended to honor a favorable plea agreement with Patterson and to call Patterson as a witness against Petitioner. That strongly suggests that the prosecution believed that Patterson would testify consistent with their case that Petitioner had planned the robberies and/or was the shooter.

In an effort to satisfy the Sixth Circuit's admonition in *Mitchell* that any Rule 60(d) motion raised in the context of habeas corpus should make a strong showing of actual innocence, Petitioner asserts that the omission of Patterson's testimony prevented Petitioner from establishing that he is actually innocent of the relevant death penalty specification by preventing Petitioner from suggesting that someone else was responsible for or participated in the shootings. (ECF No. 97, at Page ID # 1237-244.)  For example, Petitioner argues that without Patterson, defense counsel presented no independent witness to challenge the testimony of Derrick Boone—the only eyewitness to the shootings who expressly identified Petitioner as the sole shooter.  (*Id*. at Page ID # 1240.)  Petitioner's argument assumes that Patterson would have testified that Derrick Boone was the shooter or that Patterson would not have identified Petitioner as the shooter.  That assumption is supported only by the cryptic letter that Patterson would not discuss with defense counsel or even admit to having written.  In finding that counsel's tactical choice not to call Patterson did not prejudice Petitioner, this Court noted that Petitioner had presented no evidence establishing what Patterson would testify to.  Petitioner still has not.  Petitioner's arguments thus do not make the "strong showing of actual innocence" that *Mitchell* demands.

Continuing with the elements of a Rule 60(d) independent action, Petitioner states in his conclusion that there is no current remedy at law and that this Court's incorrect assumption about

26

facts critical to its denial of ground I-A constitute "extraordinary circumstances" in view of the fact that Petitioner faces a set execution date.  (ECF No. 97, at Page ID # 1245-246.)  The Court disagrees that Petitioner has no current remedy at law in view of the fact that he is not precluded from requesting authorization to file a second or successive habeas corpus petition.  The Court's discussion above also undermines a determination that the instant case presents "extraordinary circumstances" or a "grave miscarriage of justice."  With respect to the element of an "absence of fault or negligence on the part of the defendant," *Mitchell*, 651 F.3d at 595, it appears to the Court that Petitioner shares in the blame for the fact that Michael Patterson's March 28, 1997 statement was not made a part of the record if the statement is as critical as Petitioner asserts. Petitioner states in his motion that it was only after being appointed on February 27, 2013 to prepare for Petitioner's clemency proceedings that "the factual basis for this pleading was discovered."  (ECF No. 97, at Page ID # 1218.)  This strongly suggests that Petitioner has been in possession of Patterson's statement all along.

Having determined that Petitioner fails to satisfy the "indisputable elements" for a Rule 60(d) independent action and crediting Petitioner's insistence that his application for relief "is not a 60(b) motion at all" (ECF No. 101, at Page ID # 1280), the Court construes this motion as an unauthorized second petition.  Petitioner asserts that his arguments target the integrity of the prior habeas proceedings, but Petitioner is actually asking this Court to revisit its consideration of the ineffective assistance claim set forth in ground I-A and resolve that claim in Petitioner's favor.  *Gonzalez v. Crosby* and its progeny define that as a second or successive petition.

In *Gonzalez*, the Supreme Court provided parameters for determining whether a request for relief styled as a Rule 60(b) motion for relief from judgment is in fact a second or successive

petition within the meaning of 28 U.S.C. § 2244(b).  The Supreme Court explained:

> A motion that seeks to add a new ground for relief, as in *Harris, supra*, will of
> course qualify.  A motion can also be said to bring a "claim" if it attacks the
> federal court's previous resolution of a claim *on the merits*, since alleging that the
> court erred in denying habeas relief on the merits is effectively indistinguishable
> from alleging that the movant is, under the substantive provisions of the statutes,
> entitled to habeas relief.  That is not the case, however, when a Rule 60(b) motion
> attacks, not the substance of the federal court's resolution of a claim on the merits,
> but some defect in the integrity of the federal habeas proceedings.

*Gonzalez*, 545 U.S. at 532 (emphasis in original).  To that last point, the Supreme Court clarified

that an attack based on the movant's own conduct or habeas counsel's omissions "ordinarily does

not go to the integrity of the proceedings, but in effect asks for a second chance to have the

merits determined favorably."  *Id*. at n.5.  In the instant case, Petitioner persistently casts his

request for relief as going to the integrity of the prior habeas corpus proceedings by targeting this

Court's assumption as to the previously unknown contents of Michael Patterson's statement to

authorities.  In effect, Petitioner is asking for a second chance to have the ineffective assistance

claim set forth in ground I-A decided in his favor.

In *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005), the Sixth Circuit rejected a

petitioner's motion to remand his case so that the district court could consider a Rule 60(b)

motion because the Sixth Circuit found that Rule 60(b) motion to be second or successive

petition.  According to the Sixth Circuit:

> [P]ost's Rule 60(b) motion seeks to advance, through new discovery, claims that
> the district court previously considered and dismissed on substantive,
> constitutional grounds:  i.e., on the merits.  The motion is therefore a second or
> successive habeas petition.  It makes no difference that the motion itself does not
> attack the district court's substantive analysis of those claims but, instead,
> purports to raise a defect in the integrity of the habeas proceedings, name his
> counsel's failure—after obtaining leave to pursue discovery—actually to
> undertake that discovery; all that matters is that Post is "seek[ing] vindication of"
> or "advance[ing]" a claim by taking steps that lead inexorably to a merits-based

28

attack on the prior dismissal of his habeas petition.

*Id*. at 424-25.  *See also Thompkins v. Berghuis*, 509 F. App'x 517, 519 (6th Cir. 2013) ("Although the Supreme Court indicated that fraud on the federal habeas court was an acceptable reason to bring a Rule 60(b) motion because it attacks a defect in the integrity of the proceedings, the Court [in *Gonzalez*] noted that attacks that 'in effect, ask[ ] for a second chance to have the merits determined favorable' do *not* go to the integrity of the proceeding and should instead be characterized as a second or successive habeas petition." (emphasis added)).[1]  That is precisely what Petitioner is doing here.

First, the Court is not persuaded that Petitioner has identified a defect in the integrity of the prior habeas proceedings sufficient to warrant Rule 60(b) relief.  Even if the better course of action might have been for this Court to have ordered the production of Patterson's March 28, 1997 statement, the Court cannot agree that its failure to do undermines the integrity of the prior habeas proceedings with respect to the Court's denial of Petitioner's ineffective assistance claim. That is especially so in view of the relatively inconsequential import of the now-known March 28, 1997 statement.  (ECF No. 98-1.)

More importantly, although Petitioner attempts to characterize his instant request for relief as going to the integrity of the prior habeas corpus proceedings, Petitioner is unmistakably asking the Court to revisit its previous denial of ground I-A and resolve that claim in his favor. "Had the District Court addressed this claim based upon a full record," Petitioner states in the introduction of his motion, "the resolution of this claim would have been reasoned otherwise *and*

---

[1]  The Court recognizes that Petitioner is asserting this Court's assumption as to the contents of Michael Patterson's previously undisclosed March 28, 1997 statement to authorities—not fraud—as the defect in the integrity of the prior habeas proceedings.

*the result would have been favorable to Mr. Jackson such that upon a grant of habeas relief*, he

would not be subject to a death sentence as the principal offender."  (ECF No. 97, at Page ID #

1213 (emphasis added).)  As in *Gonzalez*, *Post*, and *Thompkins*, Petitioner in effect is "ask[ing]

for a second chance to have the merits determined favorably."  *Gonzalez*, 545 U.S. at 532 n.5.

　　　As the instant request for relief is a second or successive petition, this Court has

jurisdiction over it only if the Sixth Circuit has issued an order authorizing it.  28 U.S.C. §

2244(b)(3).  Petitioner has neither sought nor obtained that authorization.  The Court will

accordingly transfer the pleading to the Sixth Circuit to determine whether such authorization is

warranted.  *See, e.g., In re Bowling*, 422 F.3d 434, 440 (6th Cir. 2005); *see also In re Marsch*,

209 F. App'x 481, 482-83 (6th Cir. 2006).

　　　For the foregoing reasons, the Court **DENIES** Petitioner's Motion for Independent Relief

(ECF No. 97), **DENIES** the Warden's Motion to Dismiss (ECF No. 100), and **DENIES**

Petitioner's Motion for Leave to File Sur-Reply (ECF No. 103).  The Court further **DIRECTS**

the Clerk to **TRANSFER** Petitioner's Motion for Independent Relief (ECF No. 97) to the Court

of Appeals for the Sixth Circuit as an unauthorized second or successive Petition.

　　　**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　_____/s/ Gregory L. Frost_
　　　　　　　　　　　　　　　　GREGORY L. FROST
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE